IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JACK R. GRANGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:21-CV-251-SMD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

### **OPINION & ORDER**

Plaintiff Jack R. Granger ("Granger") applied for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") on March 21, 2017, alleging he became disabled on April 4, 2017, which he later amended to September 1, 2016. (Tr. 31, 218-29). Granger's applications were denied at the initial administrative level on August 3, 2017. (Tr. 145-56). He then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on July 8, 2020, that Granger was not disabled. (Tr. 28-41). Granger appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. (Tr. 1-6). Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Granger appeals under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned AFFIRMS the Commissioner's

decision.[1]

## I.   STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 20); Def.'s Consent (Doc. 19).

[2] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

2

based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give

---

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

**III.   ADMINISTRATIVE PROCEEDINGS**

Granger was 44 years old on his alleged disability onset date. (Tr. 219). He has a high school diploma and past relevant work experience as an asphalt raker, yard laborer, and a yard laborer supervisor. (Tr. 39). Granger alleged disability due to degenerative disc disease, osteoarthritis of the knees, depression, anxiety, urinary tract infections, diabetes mellitus, gout, hypertension, and dislocation of left elbow. (Tr. 34).

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Granger's disability determination. At step one, the ALJ found Granger has not engaged in substantial gainful activity since September 1, 2016, his amended alleged onset date. (Tr. 34). At step two, the ALJ found Granger suffers from the following severe impairments: degenerative disc disease, osteoarthritis of the knees, depression, and anxiety. (Tr. 34). At step three, the ALJ found Granger does not have an

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 34).

The ALJ proceeded to determine Granger's RFC, holding he has the capacity to perform less than a full range of light work as defined by 20 C.F.R. § 404.1567(b) and 416.967(b) with some additional postural, environmental, and mental limitations. (Tr. 36). At step four, the ALJ found Granger cannot perform any past relevant work. (Tr. 39). At step five, the ALJ, considering Granger's age, education, work experience, and RFC, found that jobs exist in significant numbers in the national economy that Granger can perform. (Tr. 40). Accordingly, the ALJ found Granger was "not disabled" from September 1, 2016, through the decision date of July 8, 2020. (Tr. 41).

## IV.   GRANGER'S ARGUMENTS

Granger argues the ALJ erred in two ways, both related to Granger's status as a *pro se* litigant. First, Granger claims the ALJ failed to acquire a proper waiver of Granger's right to representation. Second, Granger asserts the ALJ did not discharge her heightened duty to develop a full and fair evidentiary record because Granger was unrepresented. Pl.'s Br. (Doc. 14) at 6. Because the ALJ did not commit reversable error, the undersigned affirms the Commissioner's final decision.

## V.   ANALYSIS

### A. The ALJ Acquired a Waiver of Right to Representation from Granger

Granger contends the Commissioner did not adequately inform him of his right to representation before accepting his waiver of the same. Pl.'s Br. (Doc. 14) at 7-10. Moreover, Granger asserts he did not have the cognitive ability to make an informed

5

decision to waive his right to counsel. *Id.* at 9-10. The Commissioner responds that the Social Security Administration ("SSA") provided Granger with information about his right to counsel on no less than ten occasions through written correspondence and the ALJ's comments at Granger's hearings. Comm'r Resp. (Doc. 15) at 1. Likewise, the Commissioner asserts Granger was cognitively competent to waive his right to counsel because he capably interacted with the ALJ at his hearing, answered the ALJ's questions without much difficulty, and never indicated he was confused or did not understand the hearing process. *Id.* at 8-9. Because the Commissioner satisfied his burden of procuring an effective, informed waiver of the right to representation from Granger, the undersigned finds Granger validly waived his right to representation for his administrative hearing before the ALJ.

Social Security claimants have a statutory right to representation at a hearing before an ALJ, but the claimant may waive this right. *Coven v. Comm'r of Soc. Sec.*, 384 F. App'x 949, 950 (11th Cir. 2010) (quoting *Graham*, 129 F.3d at 1422). A claimant's waiver of representation must be an informed decision that the claimant undertakes knowingly and voluntarily. *Id.* at 951. The SSA bears the burden of providing the claimant information "in writing about 'the options for obtaining' a lawyer, including 'the availability to qualifying claimants of legal service organizations which provide legal services free of charge.'" *Reynolds v. Soc. Sec. Admin.*, 679 F. App'x 826, 827 (11th Cir. 2017) (quoting 42 U.S.C. § 406(c)). The Eleventh Circuit has found that "[a]n adequate explanation of the right to counsel includes information about the 'possibility of free counsel and limitations on attorney fees to 25% of any eventual award.'" *Id.* at 828 (quoting *Smith v. Schweiker*,

6

677 F.2d 826, 828 (11th Cir. 1982)). A court applies the substantial evidence standard to determine if the ALJ appropriately found an effective waiver of the claimant's right to representation. *Coven*, 384 F. App'x at 950 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

In *Coven*, the Eleventh Circuit held a claimant made a voluntary and knowing waiver of her right to representation. *Id.* The court noted, in reaching its decision, that Coven received *three* written notices from the SSA about her right to representation. *Id.* Additionally, the court pointed out that Coven signed a written waiver of the right to representation during the administrative hearing after the ALJ reminded Coven again of the right to counsel. *Id.* Thus, the Eleventh Circuit found Coven was fully informed of her right to counsel from the written correspondence from the SSA and voluntarily waived that right at the hearing after the ALJ's final admonition about the right. *Id.*

Granger maintains the ALJ did not properly inform him of his rights to representation. Given the evidence in the record, this argument is facially inaccurate and unavailing. The Commissioner points to numerous instances, no less than 10, in which the SSA provided Granger notice of his right to representation. Comm'r Resp. (Doc. 15) at 1, 3. Granger apparently concedes he received these documents. Pl.'s Reply (Doc. 17) at 1 ("The number of notices Mr. Granger received does not support the Commissioner's assertion that Mr. Granger's waiver was an 'informed' choice."). At least some of these notices from the SSA covered all of the information the Commissioner is required to provide to claimants about the right to representation. For instance, in a Notice of

Disapproved Claim sent by the SSA to Granger on August 3, 2017, the Commissioner stated:

> IF YOU WANT HELP WITH YOUR APPEAL
>
> You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee.

(Tr. 146). Likewise, in a request for hearing acknowledgment letter dated October 12, 2017, the SSA again provided Granger notice of his right to representation. Specifically, the SSA said:

> Your Right to Representation
>
> You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.
>
> Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. We are enclosing a list of groups that can help you find a representative.

(Tr. 162). Additionally, the SSA provided an enclosure offering more information about Granger's right to representation. At the beginning of that document, the SSA informed Granger, "You can have a representative, such as an attorney, help you when you do business with Social Security. We will work with your representative, just as we would

8

with you." (Tr. 165). The document continued, "[f]or your protection, your representative cannot charge or collect a fee from you without first getting written approval from us. However, your representative may accept money from you in advance as long as it is held in a trust or escrow account." (Tr. 165). The document also provided more detailed information about the permitted fee agreements and the role of a representative and articulated a list of organizations that could help Granger find a representative, including potentially for free. (Tr. 165-68).

Furthermore, at his two hearings before the ALJ, the ALJ amply informed and questioned Granger about his right to representation. At his initial hearing, which the ALJ terminated to permit Granger to present additional evidence and try to find a representative, the ALJ advised Granger of his right to representation. The ALJ had the following exchange with Granger:

> ALJ: All right. Now you also came today without an attorney or any other type of representative. I need to advise you that -- one time, that you have the right to get a representative since I'm postponing the hearing for you to get these -- or for us to get the other records for you. If you want to get a representative, now would be the time to do that. We don't appoint representatives for you, you have to hire your own but they -- they're not entitled to a fee unless you win your case. So if you want to get a representative, now would be the time because the next time you come back, because I've advised you of that right, we'll go ahead with the hearing whether you have a representative or not, okay?
>
> CLMT: Yes ma'am.
>
> ALJ: All right. Do you have any questions for me?
>
> CLMT: No ma'am.

(Tr. 82-83). Again, at the subsequent hearing, the ALJ advised Granger of his right to counsel and received a waiver of that right from Granger. The ALJ and Granger had the following exchange:

> ALJ: Okay. All right. All right, and we had a hearing as you already mentioned, in April of this year. We postponed it to get some records and for you to also attempt to find an attorney. You did not, and you've signed today the waiver of representation. As we explained in April, we go forward with the hearing without the representative if you did not get one. Yes sir?
>
> CLMT: I was just -- like nobody will touch it, anyhow.
>
> ALJ: Okay.
>
> CLMT: Once you already involved with this, no attorneys will touch it at all.
>
> ALJ: Okay.
>
> CLMT: Because they say once you're already involved, you know, that they don't get into it.
>
> ALJ: Okay. All right . . . .

(Tr. 50-51). Given the repetitive written and verbal warnings about the right to representation the Commissioner provided to Granger, and Granger's failure to claim he did not understand this right, substantial evidence supports the ALJ's finding of a waiver of the right to representation. Granger asserts his statement that no lawyer would touch this case after it was started demonstrates his lack of understanding. Pl.'s Br. (Doc. 14) at 8-9. Specifically, Granger claims the ALJ never tried to ascertain if Granger had tried to procure a representative's services or just relied on statements from others that doing so would be futile. *Id.* at 9. This argument is unpersuasive.

The Commissioner, through written correspondence and through the ALJ's questioning, informed Granger numerous times about his right to a representative. Additionally, Granger's statement about not being able to retain a representative does not suggest he did not reach out to try to hire a lawyer. Granger noted particularly, "[b]ecause *they* say once you're already involved, you know, that *they* don't get into it." (Tr. 51). Based on a plain reading, the "they" to which Granger was referring most reasonably denotes the potential representatives themselves, not others. Moreover, Granger did not say he could not get an appointment with a potential representative or in any other way imply that he was unable to access a representative; instead, Granger's statement indicates he sought representation but was unable to procure it. Granger consequently agreed to proceed with the hearing representing himself. (Tr. 51). Under these circumstances, the undersigned finds that Granger made a knowing, voluntary, intelligent, and informed decision to waive his right to representation at the hearing before the ALJ.

Granger briefly—in a single sentence with reference to another section of the brief—contends he may not have been cognitively able to knowingly and voluntarily waive his right to representation. Granger says, "[f]urthermore, in light of Mr. Granger's hearing testimony, and the remainder of the record, it is unclear if Mr. Granger had the cognitive ability to make an informed waiver." Pl.'s Br. (Doc. 14) at 10. Notably, Granger points to no law to support his argument or suggest a standard for this Court to apply in adjudicating his speculated lack of cognitive ability to waive his right to representation.

Further, Granger's argument is unavailing based on his statements on the record during his exchanges with the ALJ regarding the right to counsel. Granger never said he

11

did not understand his rights. Granger never asked for clarification from the ALJ. Rather, Granger expressed that he had sought counsel but was unable to retain someone because they told him they would not participate in a case that was already ongoing. Instead of demonstrating Granger lacked the cognitive ability to waive his right to representation, Granger's statements on the record strongly suggest he fully understood his right to counsel and could not find someone to represent him. The SSA was not required to provide Granger a representative; it was only required to notify Granger of his right to hire a representative. The Commissioner met his obligation to do so, and the record provides more than substantial evidence that Granger was cognitively capable of executing a knowing, voluntary, and informed waiver of his right to representation. The ALJ's decision to accept Granger's written and oral waivers was proper and is affirmed.

### B. The ALJ Correctly Developed the Record

As the parties rightly point out, the ALJ has a heightened duty to fully and fairly develop the record where the claimant is pro se and *has not waived* his right to representation. Pl.'s Br. (Doc. 14) at 10; Comm'r Resp. (Doc. 15) at 9; *see Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995) (quoting *Smith*, 677 F.2d at 828). As noted, Granger knowingly, intelligently, and voluntarily waived his right to representation. The heightened burden, accordingly, does not apply in this case. Instead, the ALJ bore the standard duty to develop the record before adjudicating Granger's claim. *Graham*, 129 F.3d at 1422-23 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). The Code of Federal Regulations explains the ALJ's responsibility to develop the evidentiary record:

> (b) Our responsibility:
>
> (1) Development. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give us permission to request the reports.

20 C.F.R. § 404.1512(b)(1); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Despite the ALJ's duty to develop the record, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276. Regardless, Granger contends the ALJ erred by not receiving supplemented medical records for the approximately 10 months between the hearing and the ALJ's decision. Likewise, Granger argues the ALJ impermissibly relied on outdated consultive examinations in reaching her decision. Granger acknowledges the ALJ relied on consultive examinations conducted by multiple medical professionals in reaching her decision, but asserts that these examinations were unhelpful because they were at least 24 months old at the time of the hearing. Pl.'s Br. (Doc. 14) at 10-11. Conspicuously, Granger cites to no law explicitly requiring the ALJ to order updated consultive examinations or to supplement medical records in the period between the hearing and decision.

The Eleventh Circuit in *Ellison* denied a claimant's allegation that the ALJ should have procured all medical records for the 24 month time between the claimant's application for benefits and the hearing. *Ellison*, 355 F.3d at 1276. The court noted, "[t]he ALJ was

13

required to develop Ellison's medical history for the 12 months prior to [his application for benefits]." *Id.* The Eleventh Circuit continued, "The ALJ . . . was in no way bound to develop the medical record for [the period between the application and hearing.]" *Id.*

Here, Granger has offered no support for his contention that the ALJ erred by not requesting supplemental records or updated consultive examinations. The existing records, which were voluminous, along with multiple consultive examinations, adequately supported the ALJ's opinion. Indeed, the ALJ took numerous actions to ensure a robust and well-developed record on which to make her decision. First, the record before the ALJ included medical records from as far back as 2003. (Tr. 392). Likewise, the record included consultive examinations and medical records from the intervening period between Granger's application in March 2017 to the September 2019 hearing. (Tr. 628-937). Second, at the April 2019 session, the ALJ postponed Granger's hearing to permit him to submit further medical evidence. (Tr. 81). Third, the ALJ asked Granger to provide her with a list of providers he had visited in the past few years, and, before reconvening for the September hearing, the ALJ ordered and received the records from the providers Granger listed. (Tr. 81-82); Comm'r Resp. (Doc. 15) at 11. Finally, the ALJ sought and received records from providers Granger identified at the September 2019 hearing before the ALJ rendered her decision. (Tr. 652-718, 720-937). Therefore, the ALJ was not derelict in developing the evidentiary record for a full and fair hearing and decision. Substantial medical evidence supports the ALJ's opinion, and the ALJ's failure to receive certain supplemental records between the September hearing and the decision, as well as the ALJ's failure to order updated consultive examinations, is not reversable error.

Granger next contends the ALJ erred by not posing the correct inquiries to him and by failing to adequately question his sister. Pl.'s Br. (Doc. 14) at 12-15. Granger has offered a list of questions he believes the ALJ should have asked to both him and his sister. Yet, at the hearing, the ALJ specifically asked Granger, "[a]nything else we haven't talked about you want me to know about you?" To which, Granger responded, "[n]ot that I can think of, ma'am." (Tr. 64). Accordingly, to the extent Granger claims the ALJ did not properly ask him about his limitations, the ALJ granted Granger an ample opportunity through an open forum to explain those limitations and Granger declined.

Similarly, the ALJ asked Granger's sister, who attended the September 2019 hearing, "Sandra, anything you think he left out?" Sandra only responded, "Well, I was going to comment on the insurance part. He was on Alabama Medicaid." (Tr. 64). Thus, the ALJ offered the same open forum to Granger's sister, and once again, she declined to opine further about Granger's limitations. Prompted by the ALJ's open-ended question to both witnesses, either could have discussed the issues in Granger's proposed list of questions. Granger's argument, therefore, that the ALJ failed to properly probe the available witnesses for information about Granger's limitations is unfounded.

Finally, Granger once again raises his cognitive function as a reason the ALJ did not appropriately develop the evidentiary record. Granger claims that "[t]he hearing testimony revealed that Mr. Granger was likely not sophisticated enough to elaborate on the nature of his psychological, cognitive[,] and physical symptoms, or how they affected his ability to perform substantial gainful activity. He could have answered specific questions . . . but no more." Pl.'s Br. (Doc. 14) at 15. Granger then points to multiple

15

medical records supporting his cognitive limitations. Yet, by pointing to these medical records, which were part of the evidence considered by the ALJ, Granger contradicts his own argument. The ALJ had not only the testimony of Granger and Granger's sister before her but also the medical records Granger references. Thus, the ALJ had an adequate record on which to reach a decision. Furthermore, for the reasons previously articulated, Granger's participation in the hearing does not suggest he was cognitively incapable of articulating his limitations to the ALJ. *See* above cognitive analysis at 11-12. Therefore, substantial evidence supports the ALJ's decision, and the ALJ did not commit reversable error by not asking the specific questions Granger would have preferred.

## VI.   CONCLUSION

Accordingly, it is ORDERED that the decision of the Commissioner is AFFIRMED. A separate final judgment will issue.

DONE this 10th day of November, 2022.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE